David R. and Eva MATTHIES, Plaintiffs-Respondents,

v.

The POSITIVE SAFETY MANUFACTURING COMPANY,
Defendant-Appellant,

ARB INSURANCE COMPANY, Safety Supply and Design,
Inc., f/k/a Wardco, GHI Insurance Company and The
Travelers Insurance Company, Defendants.

Supreme Court

*No. 99–0431. Oral argument January 30, 2001.—Decided
July 2, 2001.*

2001 WI 82

(Also reported in 628 N.W.2d 842.)

722

For the defendant-appellant there were briefs by *Erik J. Pless* and *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay, and *John J. Bullaro, Jr., James R. Branit* and *Bullaro & Carton*, Chicago, Illinois, and oral argument by *James R. Branit*.

For the plaintiffs-respondents there was a brief by *R. George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay, and oral argument by *R. George Burnett*.

An amicus curiae brief was filed by *William C. Gleisner, III,* and *Law Offices of William C. Gleisner*, Milwaukee, and *Rhonda L. Lanford* and *Habush, Habush, Davis & Rottier, S.C.*, Madison, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Richard L. Zaffiro*, Brookfield, on behalf of the Civil Trial Counsel of Wisconsin.

¶ 1. N. PATRICK CROOKS, J. On August 22, 1992, David R. Matthies' hand was injured by a punch press. At the time of the accident, joint and several liability was a common-law rule in Wisconsin which permitted a plaintiff to recover his or her damages from any one of two or more persons whose joint or concurring negligent acts caused the plaintiff's injury. *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis. 2d 314, 330–31, 291 N.W.2d 825 (1980) (quoting *Kingston v. Chicago & N.W. Ry. Co.*, 191 Wis. 610, 613, 211 N.W. 913 (1927)). After Matthies' accident, but before he filed this action, the legislature modified joint and several liability. The legislature modified the doctrine by amending the statute on contributory negligence, Wis. Stat. § 895.045, to limit joint and several liability to a person found 51% or more causally negligent.[1] 1995 Wis. Act 17, § 1. After Matthies filed this action, the Positive Safety Manufacturing Company (Positive Safety), the manufacturer of a safety device for the punch press, sought a declaratory order that, as amended and renumbered, Wis. Stat. § 895.045(1) (1995–96),[2] applied to Matthies' claims; and, as applied, § 895.045(1) would limit Positive Safety's liability to only that amount of causal

---

[1] Causal negligence is that negligence which is a substantial factor in causing the injuries or damage. *See Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 459, 267 N.W.2d 652 (1978).

[2] All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

negligence the jury would attribute to Positive Safety. Calumet County Circuit Judge Donald A. Poppy declined to enter the order Positive Safety sought, and, instead, declared § 895.045(1) unconstitutional in its retroactive application to this instant action. This order was taken up by the court of appeals, which, in turn, certified its appeal to this court.

¶ 2. The circuit court correctly determined that Wis. Stat. § 895.045(1) is unconstitutional if retroactively applied in this case. According to the test this court adopted in *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), to determine the constitutionality of retroactively applying a statute, retroactive application of § 895.045 is unconstitutional. Retroactively applying § 895.045(1) to this action would adversely impact Matthies' right to recover all of the damages adjudged due to him and this adverse impact substantially outweighs any public benefit that would be gained from retroactively applying § 895.045(1). We thus affirm the circuit court.

I

¶ 3. The pertinent facts are not in dispute. Matthies was a machine operator at Mirro-Foley Company in Chilton, Wisconsin. On August 22, 1992, while operating a punch press, Matthies' left hand was severely injured. According to medical records submitted to the trial court, parts of four fingers were severed.

¶ 4. On July 19, 1995, David Matthies and his wife, Eva Matthies, filed their complaint, in which David Matthies brought claims of common-law negligence and strict liability.[3] Matthies brought these

---

[3] Eva Matthies' claim for loss of society and companionship is not at issue.

claims against Positive Safety, as well as Allen- Bradley Company, Inc., the manufacturer of the foot pedal used to start the press, and E.W. Bliss Company, Inc., the manufacturer of the punch press.[4]

¶ 5. Matthies' complaint alleges that he was operating the punch press using a foot pedal and a pullback device. A pull-back device is a harness that, if operating correctly, pulls back the machine operator so that the operator's hand cannot be caught in the punch press at the point where the press pinches the metal. The complaint also alleges that Positive Safety, the manufacturer of the pull-back caused Matthies' injuries because, *inter alia*, the pull-back was ineffective, or defective and unreasonably dangerous.

¶ 6. On February 2, 1998, Positive Safety moved for a declaratory order that (1) Wis. Stat. § 895.045(1) applies to Matthies' strict liability claim; and (2) that Positive Safety's liability, if any, would be limited to only that portion of total causal negligence that the jury would attribute to Positive Safety.[5] Positive Safety argued that if Mirro-Foley is found most at fault, Positive Safety would not be liable for Matthies' entire damages under the former rule of joint and sev-

---

[4] In August 1996, the Matthies settled with Allen-Bradley, E.W. Bliss, and their insurers, and they were dismissed from the lawsuit with prejudice.

[5] We address the applicability of Wis. Stat. § 895.045(1) to strict products liability claims in a case also mandated today, *Fuschsgruber v. Custom Accessories, Inc.*, 2000 WI 81, 244 Wis. 2d 758, 628 N.W.2d 833. In *Fuchsgruber*, we hold that § 895.045 (1) does not apply to strict products liability claims. *Id.* at ¶¶ 1, 30. That holding applies here, and, consequently, there is no need to address the parties' contentions regarding § 895.045's applicability to strict products liability claims. This court's decision here applies to Matthies' common-law negligence claim.

eral liability; rather, Positive Safety's liability would be limited by § 895.045(1). Matthies sought a declaration that retroactive application of § 895.045(1) is unconstitutional.

¶ 7. On January 29, 1999, the circuit court concluded that retroactive application of Wis. Stat. § 895.045(1) to this case is unconstitutional. Positive Safety sought interlocutory review of the circuit court's order, and Matthies joined in that request. The court of appeals granted leave for appeal of the court's order pursuant to § 808.03(2).[6] Then, pursuant to Wis. Stat. Rule 809.61,[7] the court of appeals certified the appeal to this court.

## II

¶ 8. The legislature enacted 1995 Wisconsin Act 17 before Matthies filed his complaint, but after his accident. 1995 Wisconsin Act 17 amended Wis. Stat. § 895.045 as follows:

---

[6] Wisconsin Stat. § 808.03(2) provides:

(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

(b) Protect the petitioner from substantial or irreparable injury; or

(c) Clarify an issue of general importance in the administration of justice.

[7] Wisconsin Stat. (Rule) § 809.61 provides in pertinent part:

The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion.

728

Section 1. 895.045 of the statutes is renumbered 895.045(1) and amended to read:

895.045(1) (title) COMPARATIVE NEGLIGENCE. Contributory negligence ~~shall~~ does not bar recovery in an action by any person or the ~~preson's~~ person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if ~~such~~ that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence ~~attributable~~ attributed to the person recovering. <u>The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.</u>

¶ 9. Wisconsin Stat. § 895.045's predecessor, § 331.045, changed the common law rule of contributory negligence that had existed since the beginning of Wisconsin's jurisprudence. A plaintiff's contributory negligence, of any amount, was a complete defense and barred the plaintiff's recovery. *Brewster v. Ludtke*, 211 Wis. 344, 247 N.W. 449 (1933). In 1931, the legislature adopted Wis. Stat. § 331.045, which permitted recovery where a plaintiff's negligence is "not as great as the negligence of the person against whom recovery is sought." Ch. 242, Laws of 1931. Under § 331.045, "a plaintiff who is charged with 49 percent of the total negligence recovers 51 percent of his [or her] damage,

while one who is charged with 50 percent recovers nothing." *Lupie v. Hartzheim*, 54 Wis. 2d 415, 416, 195 N.W.2d 461 (1972) (citing *Vincent v. Pabst Brewing Co.*, 47 Wis. 2d 120, 177 N.W.2d 513 (1970)). In 1971, the legislature modified the comparative negligence standard to permit recovery where a plaintiff's negligence is not "greater than" the negligence of the person against whom recovery is sought. Ch. 47, Laws of 1971. "Under this statutory modification, plaintiffs found 50 percent negligent will be able to recover 50 percent of their damages from a defendant who is found to be equally at fault." *Lupie*, 54 Wis. 2d at 417. This is the comparative negligence standard we have in Wisconsin today. Wis. Stat. § 895.045(1).

¶ 10. Some cases only involve one tortfeasor, and so, the negligence is divided, if appropriate, between the two. Where cases involve multiple tortfeasors, "this court has repeatedly interpreted the comparative negligence statute as clearly providing that the comparison of negligence between the plaintiff and multiple tort-feasors involves a separate comparison between the plaintiff and each of the defendants." *Soczka v. Rechner*, 73 Wis. 2d 157, 164, 242 N.W.2d 910 (1976). The legislature appears to address this rule in the first sentence that it added to Wis. Stat. § 895.045(1): "The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent."[8] 1995 Wis. Act 17, § 1. Given that a plaintiff's negligence cannot be greater than the person against whom recovery is

[8] The parties do not dispute the constitutionality of this part of the amendments to Wis. Stat. § 895.045 made by 1995 Wis. Act 17. Accordingly, we do not now make any determination as to the constitutionality of this provision.

sought, a plaintiff's negligence cannot exceed the negligence of any one of the defendants, or the plaintiff cannot recover against that defendant. Wis. Stat. § 895.045(1). Where there are multiple defendants, the percentage of negligence that is allocated to each of the defendants found causally negligent cannot be combined to establish that the defendants' negligence is equal to or greater than the plaintiff's. *Ford, Bacon & Davis*, 96 Wis. 2d at 326–27; *Mariuzza v. Kenower*, 68 Wis. 2d 321, 325, 228 N.W.2d 702 (1975). Even where multiple defendants may be jointly and severally liable, a plaintiff cannot recover from any one of them unless the plaintiff's negligence is "not greater than" each of the defendants' negligence. Wis. Stat. § 895.045(1). For example, if a plaintiff is found to be 40% negligent and one joint defendant 39% negligent, and the other 21%, the plaintiff cannot recover.

¶ 11. Joint and several liability among multiple tortfeasors has long been a common-law rule in Wisconsin and predates the adoption of the comparative negligence statute. *See Kingston*, 191 Wis. at 613.

> The doctrine was initially applied at common law to situations where there was a concert of action or breach of a joint duty on the part of multiple tortfeasors. Thus, persons who acted in concert or breached a common duty causing injury were considered to be joint tortfeasors and each could be held liable for the entire amount of the damages. Later, the doctrine was extended to cases where a plaintiff sustained an indivisible injury, harm or damage as a result of the independent, separate, but concurring tortious acts of two or more persons. "When two actors negligently conduct themselves so as to injure another, they become jointly and severally

liable to the other if their actions concur in time to directly produce injury or to create an injury producing situation."

*Ford, Bacon & Davis*, 96 Wis. 2d at 331 (quoting *Butzow v. Wausau Mem'l Hosp.*, 51 Wis. 2d 281, 288–89, 187 N.W.2d 349 (1971)), (other citations omitted). Each joint tortfeasor is held liable for the entire amount of damages because the injury would not likely have occurred but for the negligence of any one of the joint tortfeasors. "The doctrine of joint and several liability is premised in the belief that an innocent victim should not suffer the loss caused by an immune or insolvent wrongdoer, when another wrongdoer is also liable." McChrystal, Michael, *Task Force on Tort Reform Research Paper on Joint and Several Liability*, reprinted in *Wisconsin Bar Bulletin* 16 (June 1987).

¶ 12. Also from early on, Wisconsin common law allowed for contribution between or among multiple joint tortfeasors. *Bielski v. Schulze*, 16 Wis. 2d 1, 7, 114 N.W.2d 105 (1962) (citing *Ellis v. Chicago & N. W. Ry. Co.*, 167 Wis. 392, 167 N.W. 1048 (1918)). If one of two or more joint tortfeasors has paid all or a portion of a plaintiff's damages, that tortfeasor may seek contribution, or reimbursement, from the other tortfeasors. "Contribution is an equitable doctrine, and the right to it arises when one has paid more than his just proportion of a joint liability." *Brown v. Haertel*, 210 Wis. 354, 358, 244 N.W. 633 (1933). In 1962, this court established the rule governing contribution that operates today:

[W]e conclude the amount of liability for contribution of tort feasors who sustain a common liability by reason of causal negligence should be determined in proportion to the percentage of causal

negligence attributable to each. We make it plain at the outset that this refinement of the rule of contribution does not apply to or change the plaintiff's right to recover against any defendant tort feasor the total amount of his damage to which he is entitled.

*Bielski*, 16 Wis. 2d at 6.

¶ 13. Even though this court has held that contribution does not affect joint and several liability, the court has been repeatedly asked to modify joint and several liability to conform to contribution. However, the court has rejected these requests and imposed joint and several liability even though the party's proportionate share of liability was less than another defendant's. *See Chille v. Howell*, 34 Wis. 2d 491, 500, 149 N.W.2d 600 (1967) (joint and several liability applied to a driver whose causal negligence was only 20%); *see also Fitzgerald v. Badger State Mut. Cas. Co.*, 67 Wis. 2d 321, 331, 227 N.W.2d 444 (1975) (joint and several liability applied to a defendant whose share of liability was only 30%).

¶ 14. The legislature's amendment of Wis. Stat. § 895.045, however, significantly changed joint and several liability. Assuming that the plaintiff is not negligent, that plaintiff can still recover all of his or her damages from one of two or more joint tortfeasors so long as one is found to be 51% or more causally negligent. But a plaintiff can no longer recover all of his or her damages from that same tortfeasor if that tortfeasor is found to be less than 51% causally negligent. 1995 Wisconsin Act 17, in amending § 895.045, thus limits a plaintiff's recovery from that tortfeasor found 51% or less causally negligent to that portion of the total negligence that is attributed to that

tortfeasor.[9] Wis. Stat. § 895.045(1). The issue before us today is the effect of applying the amended § 895.045(1) to Matthies' claim of negligence.

## III

¶ 15. Whether a statute has a retroactive effect upon Matthies' negligence claim "involves the construction of a statute [Wis. Stat. § 895.045] in relation to a particular set of facts and is thus a question of law" which this court reviews *de novo. Chappy v. LIRC*, 136 Wis. 2d 172, 180, 401 N.W.2d 568 (1987) (citing *State v. Nordness*, 128 Wis. 2d 15, 24, 381 N.W.2d 300 (1986)). Legislation presumably operates prospectively, not retroactively, "unless the statutory language reveals by express language or necessary implication an intent that it apply retroactively." *Chappy*, 136 Wis. 2d at 180.

¶ 16. It is evident from the legislature's express language that the legislature intended Wis. Stat. § 895.045(1) apply retroactively. According to 1995 Wisconsin Act 17, § 895.045(1) "first applies to civil actions commenced on the effective date of this subsection." 1995 Wis. Act 17, § 4. We examined this same language in *Neiman v. American National Property and Casualty Co.*, 2000 WI 83, ¶¶ 1, 11, 236 Wis. 2d 411, 613 N.W.2d 160. This language was used in 1997 Wisconsin Act 89, § 4, which enacted new limits on recovery in wrongful death actions, and, of it, we stated, "this language indicates that the legislature

---

[9] Obviously, since the amendment of Wis. Stat. § 895.045(1), only one causally negligent defendant can be held jointly and severally liable for all of the plaintiff's damages, because only one such defendant can be found 51% or more negligent.

intended to include within the scope of the amendment those claims in which the events giving rise to a cause of action had already occurred. *See Martin*, 192 Wis. 2d at 200 (phrase 'filed on or after' in a legislative act indicated the legislature's intent to apply the new law retroactively)." *Id.* at ¶ 11.

¶ 17. Here, the language in 1995 Wis. Act 17 that it first applies to actions commenced on its effective date, indicates that Wis. Stat. § 895.045(1) is also intended to apply to events which occurred before it became effective. 1995 Wisconsin Act 17 first became effective on May 17, 1995, the day after the publication date. Wis. Stat. § 991.11 (1993–94). A civil action must accrue before it can be commenced; and, a civil action is not commenced until a summons and complaint is filed with the court. *Martin*, 192 Wis. 2d at 200; Wis. Stat. § 893.02. For § 895.045(1) to apply to an action filed on the date it becomes effective, events leading to the accrual of the action must have occurred previously. Section 895.045(1) thus applies to actions that have accrued prior to its enactment. *Neiman*, 2000 WI 83, ¶ 11; *Martin*, 192 Wis. 2d at 199–200. By its express language, the legislature plainly intended that § 895.045(1) be given retroactive effect.

¶ 18. Also, the "legislative history suggests that the legislature deliberately chose this retroactive application." *Martin*, 192 Wis. 2d at 200. The original legislation, 1995 Senate Bill 11, § 4, included the adopted language, that Wis. Stat. § 895.045(1) was to be initially applied to actions commenced on its effective date. However, the Assembly Judiciary Committee offered two amendments to change the effective date. One, Assembly Amendment 1 to 1995 Senate Bill 11, sought to change the initial applicability to "acts or omissions occurring" on the effective date of the legisla-

tion. This amendment would have had § 895.045(1) apply to those actions which accrued on or after its effective date. Another amendment, Assembly Amendment 2 to 1995 Senate Bill 11, would have had § 895.045(1) apply "on the first day of the 6th month beginning after publication." Neither of these amendments were adopted, further indicating that the legislature specifically intended § 895.045(1) to apply to actions which accrued prior to its enactment. *See* Bill History for 1995 Senate Bill 11.

■

¶ 19. In addition to determining whether the legislature intended Wis. Stat. § 895.045(1) to apply retroactively, we must also determine whether, as applied to Matthies' negligence claim, § 895.045(1) has a retroactive effect. *Martin*, 192 Wis. 2d at 199; *Neiman*, 2000 WI 83, ¶ 14. For example, we concluded that the legislation in *Martin* had "a retroactive effect as applied to the Martins." 192 Wis. 2d at 199. In *Martin*, Cheryl Martin was injured on July 10, 1985 when she ran into the back of a truck while riding her bicycle. *Id.* at 163. Her injury was aggravated the same day when her father "was not properly informed of the alternate modes of treatment available to treat [her] injuries." *Id.* at 196. At the time of Ms. Martin's injury, there was no limit to the amount of noneconomic damages a plaintiff could recover in a medical malpractice action. *Id.* at 196–97. Almost a year later, on June 13, 1986, the legislature enacted a cap on such damages of $1,000,000; the cap became effective the following day. *Id.* The Martins subsequently filed a medical malpractice action; and, in August 1990, a jury awarded the Martins $2,150,000 in noneconomic damages. *Id.* at 197. We concluded that applying the cap to the Martins' award would have changed what they would have

recovered under the law that existed at the time of the accident. "Since the cause of action accrued at a time when no cap existed on the amount of noneconomic damages recoverable, application of the cap to the Martins' cause of action constitutes a retroactive application. If we allowed the cap, it would act here to limit the recovery of a cause of action which, when it accrued, was unlimited." *Id.* at 199.

¶ 20. In *Neiman*, the statutory change after the claim at issue arose affected the defendant's liability, not the plaintiff's recovery. At the time of the accident which caused Kristine Neiman's child to be stillborn, Wis. Stat. § 895.04(4) limited damages for the loss of society and companionship of a minor child in a wrongful death action to $150,000. *Neiman,* 2000 WI 83, ¶ 1. In 1997, the legislature increased the limit to $500,000. *Id.* This court concluded that the statutory change had a retroactive effect as applied to the defendant. That is, the insurer, American National Property and Casualty Company (ANPAC), had a right to a fixed exposure to liability that accrued on the date of the injury which would be adversely affected by retroactive application of the change to § 895.04(4). *Id.* at ¶ 20.

¶ 21. Matthies contends that he has an accrued or vested right to recover all of his damages from any defendant that may be jointly and severally liable for his injuries, including Positive Safety, and applying Wis. Stat. § 895.045(1)'s change to joint and several liability may limit his recovery. Positive Safety contends to the contrary—that Matthies' right to recovery does not vest or accrue until there has been a judgment in his favor, and that Matthies has no vested or accrued right in a particular remedy, in collecting on a judgment until it's final, in collecting from an immune or insolvent defendant, or, in collecting from Positive

Safety at all.[10] Here, there was no fixed statutory limit upon exposure to liability as in *Neiman*, 2000 WI 83, ¶ 20, or no statutory right to unlimited damages, as in *Martin*, 192 Wis. 2d at 206–07. Nonetheless, we disagree with Positive Safety's contentions. Matthies does have a vested right to recover all of his damages that are adjudged due to him from any defendant that may be jointly and severally liable for his injuries.

¶ 22. Matthies has a vested right in his claim for negligence. "[A]n existing right of action which has accrued under the rules of the common law or in accordance with its principles is a vested property right." *Hunter v. School Dist. Gale-Ettrick-Trempealeau*, 97 Wis. 2d 435, 445, 293 N.W.2d 515 (1980) (quoting 16 C.J.S. *Constitutional Law*, § 254 (1956)).[11] Matthies'

[10] Since joint and several liability relates to the extent of Positive Safety's liability, and not the existence of that liability, the court's determination of the effect of applying Wis. Stat. § 895.045(1) could be considered premature. *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 185, 290 N.W.2d 276 (1980) (cross-claim for contribution premature when underlying negligence had not yet been determined). However, there is no dispute that Positive Safety, if found liable, will either be liable for the entire amount of Matthies' damages or that portion allocated to Positive Safety if found less than 51% causally negligent, given Mirro-Foley's immunity as Matthies' employer, and taking into account, if necessary, Matthies' settlement proceeds. Accordingly, inasmuch as the issue of retroactivity was appropriate for a declaratory order, the issue is appropriate for our consideration in reviewing the declaratory order. "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Wis. Stat. § 806.04(1).

[11] In *Hunter*, "this court concluded that an amended statute of limitations could not work to bar a plaintiff's cause of action

738

negligence claim accrued on the date of his accident and injury. "It is the fact and date of injury that sets in force and operation the factors that create and establish the basis for a claim of damages." *Id.* at 442. Contrary to Positive Safety's assertion, it is the date of injury which is the triggering event with respect to the application of Wis. Stat. § 895.045(1)—the date that Matthies' claim accrued.[12] Included in Matthies' negli-

for negligence which accrued prior to the statutory amendment. The court in *Hunter* reasoned that the plaintiff had a vested right in a cause of action for negligence and that retroactive application of the amended statute of limitation would 'have the effect of destroying or terminating that right.' " *Martin v. Richards*, 192 Wis. 2d 156, 205–06, 531 N.W.2d 70 (1995) (quoting *Hunter v. School Dist. Gale-Ettrick-Trempealeau*, 97 Wis. 2d 435, 441, 293 N.W.2d 515 (1980)).

[12] In cases concerning the past two major legislative changes to comparative negligence, this court measured whether those changes had retroactive effect based upon when the negligence claim accrued, i.e., when the accident and injury occurred. When, in 1931, the legislature eradicated contributory negligence as an absolute bar to recovery, Wis. Stat. § 895.045's predecessor, § 331.045, was to "take effect upon passage and publication," on June 16, 1931. § 2, ch. 242, Laws of 1931. Section 331.045 could have had retroactive effect by applying to an action that had already accrued—where there had been an injury and accident—but had not yet been tried as of June 16, 1931. However, this court held that § 331.045 did not apply to actions which accrued prior to June 16, 1931. "Although sec. 331.045, Stats. 1931, relating to comparative negligence, changed the rule as to the effect of contributory negligence as a defense, that modification of the rule is not applicable in actions to recover for injuries sustained prior to June 16, 1931." *Peters v. Milwaukee E. R. & L. Co.*, 217 Wis. 481, 486, 259 N.W. 724 (1935); *see also Obenberger v. Interstate Oil Co.*, 211 Wis. 245, 246, 248 N.W. 97 (1933) ("The collision occurred prior to the enactment of the comparative negligence

739

gence claim is the right to recover under an unmodified doctrine of joint and several liability since, at the time Matthies' claim accrued, common law imposed joint and several liability upon any jointly liable person. *See, e.g., Ford, Bacon & Davis*, 96 Wis. 2d at 331–34.

¶ 23. Matthies' right to recover those damages adjudged due to him under joint and several liability would be affected by retroactive application of Wis. Stat. § 895.045(1). Section 895.045(1) is retroactive for the reasons already stated herein. Additionally, § 895.045(1) is retroactive because it attaches new legal consequences to events completed before its enactment. *Miller v. Florida*, 482 U.S. 423, 430 (1987).

> "Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or

statute by the 1931 legislature, so that contributory negligence is an absolute bar."); *Brewster v. Ludtke*, 211 Wis. 344, 346, 247 N.W. 449 (1933) (Plaintiff's negligence "constitutes a complete defense, as the collision occurred before the enactment of the Comparative Negligence Statute.").

Similarly, when the legislature again modified contributory negligence in 1971, similar to the 1931 legislation, the 1971 modification took effect on the day after it was published. *See* 1971 Assembly Bill 50 (which was enacted as ch. 47, Laws of 1971). The court again held that the modification was not retroactive, i.e., it did not apply to actions that had accrued prior to the amendment. *Holzem v. Mueller*, 54 Wis. 2d 388, 398, 195 N.W.2d 635 (1972). This court has repeatedly rejected the contention that changes to contributory negligence law—which necessarily affect a plaintiff's recovery—should apply after the accident or injury that gave rise to the plaintiff's negligence claim. At no time has this court considered that these changes should apply at the point in time Positive Safety suggests, that is, after a plaintiff has obtained a judgment.

attaches a new disability, in respect to transactions or considerations already passed, must be deemed retrospective."

*Welch v. Henry,* 223 Wis. 319, 340, 271 N.W. 68 (1937) (Fairchild, J., dissenting) (quoting *Society for the Propagation of the Gospel v. Wheeler,* Fed. Cas. No. 13,156, 2 Gall. *105, 139). Section 895.045(1) attaches new legal consequences to Matthies' injury. At the time that Matthies' cause of action accrued—on August 22, 1992 when he was injured—Matthies could recover, assuming no negligence on his part, all of his damages from any causally negligent tortfeasor regardless of what portion of the total causal negligence is ultimately attributed to that tortfeasor. If § 895.045(1) were to apply to his negligence claim, Matthies could not recover all of his damages from any tortfeasor who is less than 51% causally negligent, as he could previously. Section 895.045 thus attaches a new disability to Matthies' negligence claim.

¶ 24. Matthies' right to recover those damages adjudged due to him is impaired notwithstanding consideration of insolvent or immune individuals or entities which may also be jointly and severally liable, contrary to Positive Safety's contention.[13] Granted, Matthies cannot recover any damages from his employer, Mirro-Foley, nor can Positive Safety recover from Mirro-Foley any damages paid to Matthies' under

---

[13] Positive Safety also contends both in its briefs and at oral argument that even before the amendment to Wis. Stat. § 895.045(1), common law required the jury to consider and allocate the relative negligence of all causally negligent entities, regardless of whether or not those entities are parties. However, Matthies does not dispute this, and, accordingly, we do not address Positive Safety's arguments on that matter.

a right to contribution since workers' compensation is "the exclusive remedy against the employer." Wis. Stat. § 102.03(2). (We have described the effect of Wis. Stat. § 102.03(2) as "immunity." *See Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 175, 290 N.W.2d 276 (1980)). However, whether another jointly and severally liable person is immune or insolvent has no impact upon determining the retroactive effect of § 895.045(1). A plaintiff's right to recovery is no less effected by retroactive application of § 895.045(1) if the plaintiff is injured in a multi-car accident instead of on the job.

¶ 25. Wisconsin Stat. § 895.045(1) would have retroactive effect if it were applied to Matthies' negligence claim because it would impair his right to recover all of his damages adjudged due to him from any defendant found causally negligent for his injuries, provided that Matthies' negligence is not found to be greater than that defendant's. We thus find that § 895.045(1) has retroactive effect here. We also find that the legislature expressly intended § 895.045(1) to apply retroactively. Given the retroactive operation of § 895.045(1), we next consider whether such retroactivity is constitutional.

## IV

¶ 26. "Retroactive legislation enjoys a presumption of constitutionality, and the challenger bears the burden of overcoming that presumption."[14] *Martin*, 192 Wis. 2d at 200. That burden is demonstrating the

---

[14] "Whether or not a legislative act that applies retroactively violates due process is a question of law, which this court reviews *de novo.*" *Neiman v. Am. Nat'l Prop. and Cas. Co.*, 2000 WI 83, ¶ 8, 236 Wis. 2d 411, 613 N.W.2d 160 (citing *Chappy v. LIRC*, 136 Wis. 2d 172, 184, 401 N.W.2d 568 (1987)).

unconstitutionality of the legislation beyond a reasonable doubt. *Jackson v. Benson,* 218 Wis. 2d 835, 853, 578 N.W.2d 602 (1998). Notwithstanding that heavy burden,

> because retroactive legislation presents unique constitutional problems in that it often unsettles important rights, it is viewed with some degree of suspicion and must be analyzed within a framework different from that of prospective legislation. "The [retroactive] aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former."

*Martin,* 192 Wis. 2d at 201 (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 17 (1976)). Accordingly, we look first to whether Wis. Stat. § 895.045(1), as applied retroactively, meets the test of due process.[15]

¶ 27. That Matthies has a vested property right which has been substantially impaired by retroactive application of Wis. Stat. § 895.045(1) "is not dispositive for due process purposes. . . .Having concluded that the

---

[15] Due process is a right guaranteed by the United States and Wisconsin Constitutions. Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." This due process clause is substantially equivalent to its counterpart in the federal constitution. *Neiman,* 2000 WI 83, ¶ 8. The Fourteenth Amendment to the United States Constitution states in pertinent part that "[n]o State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ."

statute retroactively affects a substantive right that accrued before the passage of the legislation, we then proceed to apply the balancing test set forth in Martin." *Neiman*, 2000 WI 83, ¶ 14. The *Martin* test examines whether there is a rational basis for the retroactive application of the statute. *Id.* at ¶ 9. Whether there exists a rational basis involves weighing the public interest served by retroactively applying the statute against the private interest that retroactive application of the statute would affect. *Martin*, 192 Wis. 2d at 201. "Implicit within this analysis is a consideration of the unfairness created by the retroactive legislation." *Id.*

¶ 28. In *Martin*, 192 Wis. 2d at 201–12, we examined whether retroactive application of the cap on noneconomic damages in medical malpractice actions violated due process. The defendants contended that retroactive application was warranted by increased medical malpractice costs incurred by defending medical malpractice actions and increased awards. *Id.* at 202–03. However, the evidence indicated that few persons recover noneconomic damages in excess of $1,000,000. *Id.* at 203–04. Consequently, applying the cap retroactively would have no real impact upon future malpractice costs, including malpractice insurance costs and funds available in the Patients' Compensation Fund. *Id.* at 203–05.

¶ 29. On the other side of the equation, retroactive application of the damages cap had a profound effect upon the private interest at issue, namely, the Martins' right to recover their actual noneconomic damages.

> In contrast, the Martins' right to unlimited damages was a fixed, substantive right. If the cap is

744

applied to the Martins the impairment of their right will be severe: the Martins will lose $1,150,000 of their noneconomic damages. Further, they will have had no meaningful notice of such impairment. And, because of the seriousness nature of their injuries, they will be forced to help pay for "fixing" the system, while others less severely injured will not. The taking is substantial; the unfairness is palpable.

Accordingly, when we balance the public interest against the private interest affected here, keeping in mind basic considerations of fairness, we conclude that the private interest outweighs the minimal public interest served by the retroactive application of the cap.

*Id.* at 211.

¶ 30. More recently, in *Neiman*, 2000 WI 83, ¶ 1, we examined the constitutionality of retroactively applying a statutory increase in recovery for the loss of society and companionship for wrongful death of a minor. The private interests at issue included the settled expectations of those individuals and insurers who had obtained and provided coverage in relation to the amounts which were set by § 895.04(4) at the time of the injury. *Id.* at ¶ 22. In addressing such expectations, we stated: "[n]o. . .pressure, economic or otherwise, appears to support the retroactive increase in damages for loss of society and companionship. . . .In sum, the public interests served by retroactive application of the increase of wrongful death limitations do not support abrogation of the settled expectations that accrued at the time of the accident." *Id.* at ¶¶ 30, 31.

¶ 31. With *Neiman* and *Martin* in mind, we turn to considering the public interest served by retroactive

745

application of Wis. Stat. § 895.045(1) to Matthies' negligence claim. "[T]he public purpose supporting retroactivity under a due process analysis must. . .be substantial, valid and intended to remedy a general economic or social issue." *Neiman*, 2000 WI 83, ¶ 23. Indeed, where, as here, there is a substantial impairment of a vested right, "a significant and legitimate public interest" must justify that impairment. *Chappy*, 136 Wis. 2d at 188.[16]

¶ 32. As an initial matter, we note that there is nothing in the Legislative Reference Bureau's legislative drafting file which indicates that the legislature amended Wis. Stat. § 895.045 in response to a pressing, or otherwise, economic or social issue. The legislature considered a number of alternatives regarding joint and several liability before adopting the language that was enacted as 1995 Wis. Act 17. The original legislation, 1995 Senate Bill 11, abrogated joint and several liability entirely. "Under this bill, a joint tort-feasor's liability is limited to the percentage of the total causal negligence attributed to that party." Analysis by the Legislative Reference Bureau to 1995 Senate Bill 11 at 2. Subsequently, Senate Substitute Amendment 1 was offered and adopted, which read that "[t]he liability of each party found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that party. A party found to be causally

---

[16] Regarding a contract clause challenge to a statutory modification of temporary total disability benefits, the court indicated that "[i]f the legislation constitutes a substantial impairment, there must exist a significant and legitimate public purpose behind the legislation. . . .If the impairment is less than substantial, a diminished degree of scrutiny is required." *Chappy*, 136 Wis. 2d at 188 (footnote omitted).

negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed." Senate Substitute Amendment 1, to 1995 Senate Bill 11 at 1–2.[17] Before this language, as amended, was enacted as § 895.045(1), the Senate considered abrogating joint and several liability where the person is 25% or less causally negligent, or alternatively, where the person is 49% or less causally negligent. Senate Amendment 3, to Senate Substitute Amendment 1, to 1995 Senate Bill 11; Senate Amendment 7, to Senate Substitute Amendment 1, to 1995 Senate Bill 11. The Assembly considered another alternative, based upon a 15% limit provided that "the person's causal negligence is at least twice that of the causal negligence of the person recovering or the causal negligence of the person recovering is 0%, and only to the extent of the limits of any applicable insurance." Assembly Substitute Amendment 1, to 1995 Senate Bill 11 at 2. Evident from both the range of proposed changes and the final result, the legislature intended to modify the current common-law doctrine of joint and several liability. But to determine, based on the legislative history available, what motivated the legislature to modify the doctrine, requires speculation.

¶ 33. Positive Safety contends that the public interest served by Wis. Stat. § 895.045(1)'s modification of joint and several liability is fairness—apportioning liability according to the degree of causal negligence and thus paralleling the legislative change from contributory to comparative

---

[17] Senate Amendment 1, to Senate Substitute Amendment 1, subsequently replaced "party" with "person."

negligence.[18] However, as Positive Safety admits, "the modification of joint and several liability achieves the same important public goal as contribution, just by different means." (Appellant's Initial Br. at 24.) Yet, even after the enactment of Wis. Stat. § 895.045(1), contribution remains a viable alternative to the legislature's modification of joint and several liability, whereby a joint tortfeasor can pursue other tortfeasors for reimbursement "in proportion to the percentage of causal negligence attributable to each." *Bielski*, 16 Wis. 2d at 6. Long before the amendment to comparative negligence—over 75 years—the doctrine of contribution ensured the equitable apportionment of fault among joint tortfeasors. *Ellis v. Chicago & N.W. Ry. Co.*, 167 Wis. 392, 167 N.W. 1048 (1918). While Wis. Stat. § 895.045(1) may have shifted, in part, the equitable apportionment of liability among joint tortfeasors from a contribution action to a tort action, that shift does not, by itself, establish a public interest of fairness.

¶ 34. Even if fairness were served by Wis. Stat. § 895.045(1), there is no need to apply § 895.045(1) retroactively to ensure such fairness. The equitable apportionment of liability among joint tortfeasors is ensured by contribution, when all such tortfeasors are collectible. Accordingly, while fairness may serve an interest of prospective application of § 895.045(1), it does not justify retroactive application thereof. *Martin*, 192 Wis. 2d at 201.

---

[18] Positive Safety also refers to a number of out-of-state decisions to assert various public interests served by Wis. Stat. § 895.045(1). We decline to regard those cases as authoritative in establishing a public interest here.

¶ 35. Moreover, if the public interest served by Wis. Stat. § 895.045(1) is to fairly allocate liability in proportion to that amount of negligence for which the person is causally negligent, the legislature would have abrogated joint and several liability entirely. Even though the legislature initially considered that option, the legislature later rejected it. *See* 1995 Senate Bill 11; *see also* Bill History for 1995 Senate Bill 11. Instead, the legislature adopted a partial abrogation of joint and several liability, under which a person who is 51% or more causally negligent could be liable for the entire amount of plaintiff's damages (minus any contributory negligence), regardless of the portion of the total negligence apportioned to that person. 1995 Wis. Act 17, § 1.

¶ 36. Positive Safety also argues that Wis. Stat. § 895.045(1) serves a public interest of decreasing liability insurance costs and increasing the availability of liability insurance. There is nothing in the record that supports such a conclusion, nor is there any indication that the legislature considered liability insurance costs or the availability thereof in drafting § 895.045(1). More importantly, there is no evidence that liability insurance costs and availability turns upon whether the insured could be held partially liable, wholly liable, or jointly and severally liable. What this court found in *Martin* also applies here: "we. . .are familiar with the generic reasons which are often cited for [limiting recovery]. However, as stated above, there is little if any evidence in this record to support those assertions." 192 Wis. 2d at 205.

¶ 37. Although there may be a public interest in fairness to warrant modification of joint and several liability, the same does not justify retroactive application of Wis. Stat. § 895.045(1). Rather, there is a public

interest that is served by *not* applying that statute retroactively. If § 895.045(1) could apply retroactively, such retroactive application could potentially affect cases that have been resolved by litigation or settlement, generating further, unnecessary, litigation. In *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 577, 157 N.W.2d 595 (1968), we explained such effect of retroactively applying the change in the common law of contribution:

> The possibility of imposing an excessive burden on the administration of justice was a compelling judicial reason for the limitation placed on the retrospective application of this court's decision in [*Bielski*], which changed our contribution rule and discarded the concept of gross negligence. This is best described by former Mr. Justice Thomas E. Fairchild in his article in 46 Marquette L. Rev. 1, 15:

> "In *Bielski* the court limited the retrospective application of the change in law with respect to contribution and gross negligence. Here again were elements of law which are ordinarily not relied upon by people who are about to engage in tortious conduct. Yet the court was mindful of the fact that if full retrospective application were given, burdens of further litigation would probably be imposed on litigants and the public in cases where claims had been substantially disposed of by litigation or settlement. Such burdens would seem to be wasteful."

*Fitzgerald*, 38 Wis. 2d at 577.[19] We would not expect that, with any degree of frequency, cases would be

[19] There is, however, an important distinction between *Bielski v. Schulze*, 16 Wis. 2d 1, 7, 114 N.W.2d 105 (1962), and the case at hand as to what event would trigger retroactive application of the change in law. In *Bielski*, this court refined the

reopened or there would be further litigation on cases already disposed of or settled. Nevertheless, the burdens of further litigation is another factor to consider in determining the public interest in retroactively applying a change in the law.

¶ 38. We next turn to the other side of the *Martin* balancing test, and consider the private interest which would be affected by the retroactive application of Wis. Stat. § 895.045(1). We keep in mind the basic unfairness of applying a rule that did not exist at the time that Matthies was injured. *See Martin,* 192 Wis. 2d at 201.

---

common law rule of contribution from "equal contribution" (three defendants pay one-third of the damages for which they are jointly and severally liable) to contribution based upon the amount of negligence assigned to each defendant (three defendants pay 15%, 35%, and 50%, respectively, of the damages according to the amount of negligence for which they are causally negligent). *Id.* at 6–14. The court determined that this modification applied at that point in time when the right to contribution typically arises, namely, when a tortfeasor has paid "more than his proportionate share." *Id.* at 9.

> The new rules shall apply generally whether the cause of action has heretofore arisen or not except that they shall not apply in the following situations: (1) Where a judgment based upon the old rules has been entered and no motion to vacate it has been made or appeal taken before this date; (2) where verdicts have been rendered sufficient to dispose of the case under the former rules but where application of the new rules would require a new trial not required for other reasons; (3) when settlements have been effected with one co-tort-feasor in such manner as would sufficiently protect him from liability for contribution under the former rules.

*Id.* at 19.

Here, in contrast, the trigger, the right to recovery, arises at that point in time when that right accrues, i.e., at the time that the plaintiff is injured. *Martin,* 192 Wis. 2d at 199; *Hunter,* 97 Wis. 2d at 442.

¶ 39. Simply, the private interest affected is Matthies' right to recover all of his damages adjudged due to him from Positive Safety. Here, as in *Martin*, a right of recovery that accrued on the date of injury has been substantially impaired by subsequent legislation. 192 Wis. 2d at 208–09. In *Martin*, "[i]f applied, the cap on damages would retroactively impair that right [to recover, in full, the noneconomic damages awarded by the jury]. If the cap on damages were applied, the Martins would lose $1,150,000—over half of their recovery. This is a severe impairment of their rights." *Id.* at 209.

¶ 40. At the time that Matthies' claim accrued, Matthies could recover all of the damages that may be awarded him from Positive Safety under the common law doctrine of joint and several liability if Positive Safety was found to be causally negligent. Wisconsin Stat. § 895.045(1), applied retroactively, would affect Matthies' vested right to recover all the damages awarded from Positive Safety. If, at best, Positive Safety is found to be 50% causally negligent, Matthies will lose half of the damages to which he had been entitled to recover from Positive Safety as of the time his injury was incurred. Retroactive application of § 895.045(1) would thus substantially impair Matthies' negligence claim.

¶ 41. "Our analysis also requires that we examine the fairness of the retroactive taking." *Martin*, 192 Wis. 2d at 209. Here, as in *Martin*, the impairment of Matthies' right to recover those damages adjudged due to him is inherently unfair because Matthies had no real notice of the impending statutory impairment of that right. In *Martin*, we said:

> The cap was published one day and it became law the next. Without any meaningful notice, the Mar-

> tins were stripped of their right to unlimited damages because they did not file on June 13, 1986, the day before the announced cap became effective. . . .

*Id.* Similarly, Wis. Stat. § 895.045(1) became effective the day after it was published. 1995 Wis. Act 17, § 4. On May 16, 1995, Matthies could recover all of his damages from Positive Safety; the next day, he could not—unless, which, apparently, the parties agree may be unlikely, Positive Safety is found to be 51% or more causally negligent.[20]

¶ 42. The lack of meaningful notice is also inherently unfair because Matthies had no notice that he should have filed this action on May 16, 1995, the date of publication, instead of May 17, 1995, or after. However, another plaintiff who was injured after Matthies, but filed a negligence claim before, could fully recover (notwithstanding any contributory negligence) from any one of two or more joint tortfeasors. The intrinsic unfairness in the lack of notice here bolsters the conclusion that the legislature typically enacts legislation to apply prospectively, rather than retroactively, so as to avoid disrupting settled expectations.

> Strong common-law tradition defines the legislature's primary function as declaring law to regulate future behavior. Thus, as a matter of justice, no law should be enforced before people can learn of its existence and conduct themselves accordingly. In short, retroactivity disturbs the stability of past transactions.

---

[20] Referring himself and Positive Safety's counsel, Matthies' counsel stated at oral argument that "we both recognized very clearly that this is a case where the employer may well be more than 51% at fault."

*Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 293–94, 588 N.W.2d 19 (1999) (quoting *Employers Ins. v. Smith*, 154 Wis. 2d 199, 453 N.W.2d 856 (1990)).

¶ 43. Here, the settled expectations are all on the side of Matthies. The *Martin* balancing does not consider Positive Safety's private interest. 192 Wis. 2d at 210–211. However, even if Positive Safety's interests were considered, Positive Safety had no interests that would be abrogated by retroactive application of Wis. Stat. § 895.045(1). Unlike in *Neiman*, Positive Safety had no fixed exposure to liability as of the date of Matthies' injury, or no settled expectations of liability. 2000 WI 83, ¶¶ 20–22. As of the time that Matthies' claim accrued, unmodified joint and several liability was the operative doctrine. To apply the modified joint and several liability in § 895.045(1) would be a boon to Positive Safety. "This hardly befits notions of fundamental fairness." *Martin*, 192 Wis. 2d at 210.

¶ 44. Now that the respective interests have been considered, the court balances them.

> Having considered the loss of rights incurred. . .and the unfair manner in which that loss was occasioned, we must engage in the due process analysis recited earlier to determine whether the retroactive application of [the statute at issue] is constitutional. To restate that analysis, we must balance the public interest served by the retroactive application of the [statute at issue] against the private interests that are overturned by it, including any unfairness inherent in such application.

*Id.* at 210–11.

¶ 45. There is little in the balance on the side of a public interest served by retroactive application of Wis. Stat. § 895.045(1). Contribution still operates to serve

an asserted purpose of § 895.045(1) to ensure that one joint tortfeasor does not pay more than his or her portion of the total causal negligence. There is no evidence that modification of joint and several liability would facilitate the acquisition of liability insurance, or reduce the cost thereof. Nor is there any evidence that the legislature was faced with a pressing economic or social need to warrant retroactive application of § 895.045(1).

■

¶ 46. In contrast, retroactive application of Wis. Stat. § 895.045(1) would severely impair Matthies' right to recover all of his damages adjudged due to him. Joint and several liability applied to Positive Safety at the time that Matthies' negligence claim accrued. Yet, without any real notice, § 895.045(1) was enacted, which would in effect, limit joint and several liability, and, as the parties predict, prevent Matthies' full recovery of his damages. At best, and disregarding the unique situation arising from the fact that he was injured at work (*see* § 102.03(2)), Matthies could lose half of his damages. Where once Matthies was entitled to full recovery, that recovery will be limited to that causal negligence apportioned to Positive Safety, which may be considerably less than 50%. It should be remembered that notwithstanding the legislature's modification of joint and several liability, the common law doctrine was originally adopted because, regardless of the fault attributed to any one of multiple joint tortfeasors, the injury or harm would not have occurred but for that tortfeasor's negligence. *See Ford, Bacon & Davis*, 96 Wis. 2d at 331. Here, "[t]he taking is substantial; the unfairness is palpable." *Martin*, 192 Wis. 2d at 211.

¶ 47. We find that Matthies has established beyond a reasonable doubt that there is no rational basis for retroactively applying the partial abrogation of joint and several liability in Wis. Stat. § 895.045(1) to his negligence claim. Balancing the private interest against the public interest, we conclude that the substantial impairment of Matthies' right to recovery significantly outweighs the public interest, if any, served by retroactive application of § 895.045(1). Matthies was entitled to a full recovery of his damages at the time he was injured from any defendant found causally negligent. It would be unfair and violate due process to change that rule after the fact. Accordingly, retroactive application of § 895.045(1)'s modification of joint and several liability is an unconstitutional violation of due process.[21] We reiterate, though, that we find § 895.045(1) unconstitutional *only* as it applies retroactively.[22]

---

[21] Because we find that retroactive application of Wis. Stat. § 895.045(1) violates due process, we need not address Matthies' contention that such retroactive application violates the equal protection clauses of the United States and Wisconsin Constitutions and the remedies clause of the Wisconsin Constitution.

[22] We do not address *amicus curiae* Civil Trial Counsel of Wisconsin's contentions regarding the constitutionality of the prospective application of Wis. Stat. § 895.045(1). The arguments were made in response to Wisconsin Academy of Trial Lawyers' *amicus curiae* brief filed with the court of appeals. The Wisconsin Academy of Trial Lawyers did not repeat those arguments before this court, and instead, contended that "the constitutionality of applying the May 17, 1995 amendment to § 895.045 to the facts of the case at bar ought to be resolved exclusively by determining that amendment's retroactive effect on the due process rights of Matthies." (Initial *Amicus Curiae* Br. of the Wisconsin Academy of Trial Lawyers at 2.) We have done just that.

## V

¶ 48. At the time that Matthies was injured by the punch press, there were no limits on his right to recover all of the damages adjudged due to him from any party found to be jointly and severally liable. The enactment of Wis. Stat. § 895.045(1) impaired that right, which accrued to Matthies on the date he was injured. In applying the *Martin* test to determine whether retroactive application of § 895.045(1) violates due process, we conclude that any public interest served by that retroactive application is substantially outweighed by the impairment of Matthies' right to recover. We hold that retroactive application of § 895.045(1) to Matthies' negligence claim would be unconstitutional, and we thus affirm the circuit court.

*By the Court.*—The order of the circuit court is affirmed.